**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FRANCIS ALBANI, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 09-4790 |
| | : | |
| UNITED STATES OF AMERICA, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                            **JUNE 9, 2010**

Presently before the Court is: (1) a Motion to Dismiss filed by the United States of

America (the "United States"), the Department of Homeland Security (the "DHS"), Michael

Chertoff ("Chertoff"), Edward S. "Kip" Hawley ("Hawley"), George E. Clisby ("Clisby"),

Christine Pritchett-Griggs ("Pritchett-Griggs"), Leo Jackson ("Jackson") and Victoria Jones[1]

("Jones") (collectively, "Federal Defendants"); and (2) a Motion to Dismiss filed by Detective M.

Wojciechowski ("Wojciechowski"). For the reasons set forth below, Federal Defendants'

Motion will be granted in part and denied in part, and Wojciechowski's Motion will be granted.

## I.     FACTS

On October 19, 2009, Albani filed his Complaint in this Court. In his Complaint, Albani

states that on November 9, 2003, he was hired as a Transportation Security Officer ("TSO") for

the Transportation Security Administration (the "TSA").[2] He further asserts that in February of

---

[1] "Victoria Jones" is identified as "Rebecca Jones" in Albani's Complaint.

[2] According to the TSA's website, the duties and responsibilities of TSOs include implementing
security-screening procedures that are integral to TSA objectives and that will "serve to protect the traveling

2005, he was promoted to Lead Transportation Security Officer ("LTSO").[3]  The Complaint

alleges that at all times material hereto:  (1) the United States operated the agency of the DHS

and its sub-agency, the TSA (Compl. ¶ 2); (2) Chertoff was the Secretary of the DHS (id. ¶ 3);

(3) Hawley was the Administrator of the TSA (id. ¶ 4); (4) Clisby was the Assistant Federal

Security Director for Screening of the TSA in Philadelphia, Pennsylvania (id. ¶ 5); (5) Pritchett-

Griggs was the Deputy Federal Security Director for Screening of the TSA (id. ¶ 6); (6) Jackson

was a Federal Law Enforcement Agent (id. ¶ 7); and (7) Jones was a Federal Law Enforcement

Agent (id. ¶ 8).

In his Complaint, Albani alleges that during the relevant time period, the individual

Federal Defendants acted within the course and scope of their employment and under color of

federal law.  (Pl.'s Compl. ¶¶ 3-8.)  Further, Albani has sued the individual Federal Defendants

individually as well as in their official capacities.  (Id.)  The Complaint also alleges that at all

times material hereto, Wojciechowski was a Police Officer and Detective for the City of

Philadelphia Police Department and was acting "under color of State law, to wit, under color of

the statutes, ordinances, regulations, customs and usages of the United States, and of the

Commonwealth of Pennsylvania pursuant to his respective authority as a police officer and

detective of the City of Philadelphia."  (Id. ¶ 9.)

Albani asserts that on or about October 20, 2007, a passenger claimed to have lost her

public by preventing any deadly or dangerous objects from being transported onto an aircraft."  TSA: Find
Your Dream Job, http://www.tsa.gov/join/careers/careers_security_jobs_tso.shtm (last visited June 8, 2010).

[3] According to the TSA's website, the duties and responsibilities of LTSOs, like TSOs, include
implementing security-screening procedures that are central to TSA objectives and that will "serve to protect
the traveling public by preventing any deadly or dangerous objects from being transported onto an aircraft."
TSA: Find Your Dream Job, http://www.tsa.gov/join/careers/careers_security_jobs_ltso.shtm (last visited June
8, 2010).

wallet in or about the passenger screening security checkpoint at Philadelphia International Airport where Albani was working. (Id. ¶ 20.) Albani further alleges that on November 5, 2007, Jackson and Jones "required him to accompany them" from his checkpoint work station to the Philadelphia Police Department where Wojciechowski was present. (Id. ¶ 21.) Albani claims that he was then "interrogated for two and half hours and gave a three page written statement." (Id.) Albani further claims that he was then "instructed to leave work even though his shift was not yet done and to return in two days which he did." (Id.)

Albani states that on November 22, 2007, he reported to work and "after signing in, he was taken into custody and arrested by Defendant Detective Wojciechowski and charged with theft by unlawful taking, theft loss property and theft RSP arising out of the October 20, 2007 incident." (Id. ¶ 22.) Albani alleges that he remained in custody for twenty-one hours. (Id.)

On December 12, 2008, following a bench trial in the Philadelphia Municipal Court, Albani was found not guilty of all charges related to the October 20, 2007 incident. (Id. ¶ 23.) Specifically, regarding the charges brought against Albani, the trial judge stated: "It's suspicion. I don't think you have beyond suspicion and conjecture on a good day. I understand the suspicion, but I'm at beyond a reasonable [doubt]. And I'm not there." (Pl.'s Mem. of Law in Opp. to Mot. to Dismiss, Ex. D at 44.)

On February 24, 2008, Albani's American Federation of Government Employees representative received a Notice of Proposed Removal prepared by Clisby, dated February 20, 2008. (Id., Ex. B at 1.) In the Notice of Proposed Removal, Clisby stated that "[t]he security videotapes . . . . show you departing from the checkpoint with your arm close to your body in a manner that is consistent with holding the passenger's wallet under your vest." (Id., Ex. B at 13-

3

14.)  Clisby further stated that "[y]ou have the right to reply to this proposal orally and/or in writing and furnish evidence in support of your reply . . . ."  (Id., Ex. B at 14.)  In a letter dated March 6, 2009, counsel for Albani responded to the Notice of Proposed Removal, arguing that because the "TSA has not proved by a preponderance of the evidence that Mr. Albani has committed the crime of theft, this proposed removal is invalid as a matter of law and must be rescinded immediately."  (Id., Ex. B at 93.)

In a letter dated March 9, 2009, counsel for Albani informed the TSA that "[d]emand is made for lost wages, future lost wages, pain and suffering and impairment of the quality of life." (Id., Ex. E at 1.)  Albani alleges that by September 6, 2009, neither the TSA nor the DHS had either accepted or objected to his demand.  (Pl.'s Compl. ¶ 13.)  Therefore, pursuant to 28 U.S.C. § 2675(a), Albani considers the failure to act as a final denial of his claim.  (Id.)

On March 30, 2009, Pritchett-Griggs issued a Notice of Decision on Proposed Removal, effective April 3, 2009.  (Pl.'s Mem. of Law in Opp. to Mot. to Dismiss, Ex. B at 43.)  In the Notice of Decision on Proposed Removal, Pritchett-Griggs stated that she considered Albani's arguments in his March 6, 2009 letter, as well as various mitigating factors, but nonetheless decided to remove Albani from his position with the TSA.  (Id., Ex. B at 44-45.)  In the Notice, Pritchett-Griggs also informed Albani that he had the right to appeal the decision in writing to the TSA's Disciplinary Review Board and explained the relevant procedures.  (Id., Ex. B at 45.)

In a letter dated May 4, 2009, counsel for Albani submitted a Disciplinary Review Board Appeal of the Notice of Decision on Proposed Removal.  Albani's counsel stated in the appeal brief that:

Albani asks that TSA rescind this removal, restore him to his former rank of

LTSO, and grant him back pay, annual leave, sick leave and seniority privileges dating back to his last day of work, December 14, 2007, or at the very least to December 12, 2008, the date of his acquittal.

(Id., Ex. B at 2.)  In a letter dated July 9, 2009, Ernest Carrozza, Director of the Disciplinary Review Board, informed Albani that the Disciplinary Review Board met on July 8, 2009 and denied his appeal.  (Id., Ex. C at 1.)

Albani's Complaint contains eight Counts:  (1) a negligence claim under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 ("FTCA"), against the United States; (2) a claim pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) ("Bivens claim") against Chertoff; (3) a Bivens claim against Hawley; (4) a Bivens claim against Clisby; (5) a Bivens claim against Pritchett-Griggs; (6) a Bivens claim against Jackson; (7) a Bivens claim against Jones; and (8) a claim pursuant to 42 U.S.C. § 1983 against Wojciechowski.  Against Federal Defendants, Albani alleges violations of his rights under the First, Fourth, Fifth and Eighth Amendments of the United States Constitution.  (Id., Ex. A at 13-23.)  Against Wojciechowski, Albani asserts violations of his rights under 42 U.S.C. § 1983, as well as the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution.  (Id., Ex. A at 25-26.)  Albani also alleges, inter alia, that "Wojciechowski unlawfully and negligently arrested and prosecuted" him.  (Id., Ex. A at 25.)

On December 16, 2009, Wojciechowski filed a Motion to Dismiss.  In his Motion, Wojciechowski argues that Albani's claims under the First, Fifth, Sixth, Eighth and Fourteenth Amendments are meritless.  Wojciechowski, however, does not argue against the merits of Albani's Fourth Amendment claim, but only contends that Albani's claims against him for negligence are barred by the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S. §

8541 et seq. (the "Tort Claims Act").

On December 22, 2009, Federal Defendants filed their Motion to Dismiss. Regarding the FTCA claim, Federal Defendants argue that: (1) Albani failed to exhaust administrative remedies; (2) the claim is precluded by Civil Service Reform Act, Pub. L. 95-454, 92 Stat. 1111 et seq. (codified, as amended, in various sections of 5 U.S.C. (1982 ed. and Supp. IV)) ("CSRA"); and (3) the claim is barred by the Aviation Transportation and Security Act, Pub. L. No. 107-71, 115 Stat. 597 (2001), as codified in 49 U.S.C. § 114 et seq. ("ATSA"). Regarding the Bivens claims, Federal Defendants argue that: (1) the claims are not applicable in the employment context; (2) Albani failed to establish a cause of action under Bivens; and (3) the claims are barred by the doctrine of qualified immunity.

On February 16, 2010, Albani filed his Response to the Motions filed by Federal Defendants and Wojciechowski (collectively, "Defendants"). In his Response, Albani does not address the merits of his claims under the First, Sixth, Eighth and Fourteenth Amendments. Albani, however, requests that the Court grant him leave to amend rather than dismiss his claims with prejudice if we find that his pleadings are insufficient under Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). Albani also attaches as an Exhibit to his Response a Standard Form 95 dated February 16, 2010 (stating that it was "refiled from 3/9/09") wherein Albani asserted that the total amount of his claim is $2,000,000.00. (Pl.'s Mem. of Law in Opp. to Mot. to Dismiss, Ex. F at 1.)

On March 2, 2010, Federal Defendants filed their Reply to Albani's Response, reiterating the various arguments set forth in their Motion. Federal Defendants also argue that Albani's conditional request for leave to amend should be denied because Albani did not attach a copy of

his proposed amended complaint and because amendment would be futile. On March 11, 2010, Albani filed his Reply, restating the arguments from his Response.

## II. STANDARDS OF REVIEW

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Pursuant to Federal Rule of Civil Procedure 12(b)(1), when "considering a motion to dismiss for lack of subject matter jurisdiction, the person asserting jurisdiction bears the burden of showing that the case is properly before the court at all stages of the litigation." Fed. Realty Inv. Trust v. Juniper Props. Group, No. 99-3389, 2000 WL 45996, at *3 (E.D. Pa. 2000) (citing Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1993)). The district court, when reviewing a motion to dismiss for lack of subject matter jurisdiction, "must accept as true the allegations contained in the plaintiff's complaint, except to the extent federal jurisdiction is dependent on certain facts." Id. (citing Haydo v. Amerikohl Mining, Inc., 830 F.2d 494, 496 (3d Cir. 1987)). The district court is not confined to the face of the pleadings when deciding whether subject matter jurisdiction exists. Id. (citing Armstrong World Indus. v. Adams, 961 F.2d 405, 410, n.10 (3d Cir. 1992)). "In assessing a Rule 12(b)(1) motion, the parties may submit and the court may consider affidavits and other relevant evidence outside of the pleadings." Id. (citing Berardi v. Swanson Mem'l Lodge No. 48 of Fraternal Order of Police, 920 F.2d 198, 200 (3d Cir. 1990)). In the case where the defendant attacks jurisdiction with supporting affidavits, "the plaintiff has the burden of responding to the facts so stated." Id. "A conclusory response or a restatement of the allegations of the complaint is not sufficient." Id. (citing Int'l Ass'n of Machinists & Aerospace Workers v. N.W. Airlines, Inc., 673 F.2d 700, 711 (3d Cir. 1982)).

**B.    Motion to Dismiss for Failure to State a Claim**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  Under Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atl. Corp. v. Twombly, the Supreme Court stated that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  550 U.S. 544, 555 (2007).

Following Twombly, the Third Circuit has explained that the factual allegations in the complaint may not be "so undeveloped that it does not provide a defendant the type of notice which is contemplated by Rule 8."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  Moreover, "it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'"  Id. (alteration in original) (quoting Twombly, 550 U.S. at 563 n.8).  Furthermore, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level."  Id. at 234 (quoting Twombly, 550 U.S. at 555).  "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'"  Id. (quoting Twombly, 550 U.S. at 556).

In Ashcroft v. Iqbal, the Supreme Court applied the Twombly standard, stating that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'" 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 570). The Supreme Court explained that deciding whether a "complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

Notwithstanding Twombly and Iqbal, the general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief, not detailed factual allegations. Phillips, 515 F.3d at 231. Moreover, when evaluating a motion to dismiss, the court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint, and must view any reasonable inferences that may be drawn therefrom in the light most favorable to the plaintiff. Id.; Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III.    DISCUSSION

### A.    FTCA Claim

As stated, Albani has asserted a claim against the United States under the FTCA for negligent investigation of Albani's alleged theft. Regarding this claim, Federal Defendants argue that this Court lacks subject matter jurisdiction over this claim because Albani failed to exhaust administrative remedies prior to filing the instant lawsuit.

Unless it consents to be sued, the United States is immune from suit as a sovereign.

United States v. Mitchell, 445 U.S. 535, 538 (1980). The consent of the United States must be

"unequivocally expressed," and the terms of its consent define the district court's subject matter

jurisdiction. Id. The FTCA serves as a limited waiver of the United States's sovereign

immunity. Roma v. United States, 344 F.3d 352, 362 (3d Cir. 2003).

The FTCA states, in relevant part: "The United States shall be liable, respecting the

provisions of this title relating to tort claims, in the same manner and to the same extent as a

private individual under like circumstances, but shall not be liable for interest prior to judgment

or for punitive damages . . . ." 28 U.S.C. § 2674. Because the FTCA operates as a waiver of

sovereign immunity, its "established procedures have been strictly construed." Livera v. First

Nat'l State Bank of N.J., 879 F.2d 1186, 1194 (3d Cir. 1989). "[W]e should not take it upon

ourselves to extend the waiver beyond that which Congress intended." United States v. Kubrick,

444 U.S. 111, 117-18 (1979). If a plaintiff fails to comply with the requirements of the FTCA, a

federal court must dismiss the suit for lack of jurisdiction. See Peterson v. United States, 694

F.2d 943, 945 (3d Cir. 1982); Bialowas v. United States, 443 F.2d 1047 (3d Cir. 1971).

Section 2675(a) states, in relevant part:

> An action shall not be instituted upon a claim against the United States for money
> damages for injury or loss of property . . . caused by the negligent or wrongful act
> or omission of any employee of the Government while acting within the scope of
> his office or employment, unless the claimant shall have first presented the claim
> to the appropriate Federal agency . . . .

28 U.S.C. § 2675(a). Subsection (b) further specifies that an action under the FTCA "shall not

be instituted for any sum in excess of the amount of the claim presented to the federal agency . . .

." Id. § 2675(b). "This provision 'anticipates that the claim will be for a definite amount.'"

White-Squire v. U.S. Postal Serv., 592 F.3d 453, 457 (3d Cir. 2010) (quoting Adams v. United States, 615 F.2d 284, 292 n.17 (5th Cir. 1980)).  Thus, an administrative claim must generally include a "sum certain" to satisfy the FTCA.[4]  28 C.F.R. § 14.2(a).  The notice of claim allows "[t]he head of each federal agency, or his designee for the purpose ... to process and settle claims within fixed monetary limits against the United States for injury or damage caused by any employee of the agency while acting within the scope of his employment."  Bialowas, 443 F.2d at 1049.

Albani argues that three documents satisfy the "sum certain" requirement:  (1) the March 9, 2009 letter to the TSA in which counsel for Albani states that "[d]emand is made for lost wages, future lost wages, **pain and suffering and impairment of the quality of life**" (Pl.'s Mem. of Law in Opp. to Mot. to Dismiss, Ex. E (emphasis added)); (2) the May 4, 2009 appeal brief in which Albani's counsel stated that Albani requests that TSA "rescind this removal, restore him to his former rank of LTSO, and grant him back pay, annual leave, sick leave and seniority privileges dating back to his last day of work, December 14, 2007, **or** at the very least to December 12, 2008, the date of his acquittal" (id., Ex. B at 2 (emphasis added)); and (3) a Standard Form 95 **dated February 16, 2010** (but stating that it was "refiled from 3/9/09") wherein Albani stated that the total amount of his claim is $2,000,000.00 (id., Ex. F).

Albani argues that the March 9th letter "substantially complies" with the sum certain

[4] 28 C.F.R. § 14.2(a) provides, in pertinent part:  "For purposes of the provisions of 28 U.S.C. 2401(b), 2672, and 2675, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident . . . ."  28 C.F.R. § 14.2(a).

requirement. However, as stated in <u>Livera</u>, because the FTCA constitutes a waiver of sovereign immunity, its "established procedures have been strictly construed." 879 F.2d at 1194. It is clear that neither the March 9th letter nor the May 4th appeal brief contained a "definite amount" as required under the FTCA. <u>See</u> <u>White-Squire</u>, 592 F.3d at 457. Furthermore, the Standard Form 95 is dated February 16, 2010, and thus, was filed after commencement of this lawsuit on October 19, 2009. Albani cannot be deemed to have exhausted his administrative remedies under the FTCA through such a filing because 28 U.S.C. § 2675(a) states that "[a]n action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency . . . ." Therefore, the United States must be dismissed from this action because Albani failed to exhaust his administrative remedies under the FTCA.[5]

## B. <u>Bivens</u> Claims

As mentioned, Albani has asserted <u>Bivens</u> claims against six individual Federal Defendants. Regarding these claims, Federal Defendants argue that: (1) the <u>Bivens</u> claims are not applicable in the employment context; (2) Albani failed to establish causes of action under <u>Bivens</u>; and (3) the <u>Bivens</u> claims are barred by qualified immunity.

### 1. Whether the <u>Bivens</u> Claims are Applicable in the Context of Employment as a TSA Airport Screener

In <u>Bivens</u>, the Supreme Court held that federal officers who acted under color of law were liable for damages caused by their violations of a plaintiff's Fourth Amendment rights. 403 U.S.

---

[5] Because Albani failed to exhaust administrative remedies, this Court lacks subject matter jurisdiction to entertain his FTCA claim, and therefore, we need not address Federal Defendants' other arguments regarding the claim.

at 389, 397. Generally speaking, <u>Bivens</u> stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." <u>Butz v. Economou</u>, 438 U.S. 478, 504 (1978).

Where a claim is in the context of federal employment, however, the claim generally must be brought under the CSRA, "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." <u>United States v. Fausto</u>, 484 U.S. 439, 445 (1988) (citation omitted). More than two decades after Congress passed the CSRA in 1978 and less than ten weeks after September 11, 2001, Congress enacted the ATSA in order to improve airport security. <u>See</u> <u>AFGE TSA Local 1 v. Hawley</u>, 481 F. Supp. 2d 72, 76 (D.D.C. 2006). Section 111(d) of the ATSA provides, in part:

> Notwithstanding any other provision of law, the Under Secretary of
> Transportation for Security may employ, appoint, discipline, terminate, and fix the
> compensation, terms, and conditions of employment of Federal service for such a
> number of individuals as the Under Secretary determines to be necessary to carry
> out the screening functions of the Under Secretary under section 44901 of title 49,
> United States Code.

§ 111(d), 49 U.S.C. § 44935 note.

The issue before us is one of first impression in this Circuit – whether airport screeners may challenge constitutional violations by the TSA directly in federal court. Only a handful of cases have decided this issue and it appears that none have held that a non-probationary airport screener[6] – such as Albani – is precluded from bringing a claim for an alleged constitutional

---

[6] A probationary airport screener is a screener who has been employed by the TSA for less than one year. <u>AFGE Local 1 v. Stone</u>, 502 F.3d 1027, 1030 (9th Cir. 2007).

violation by the TSA to federal court.

In <u>American Federation of Government Employees Local 1 v. Stone</u>, the plaintiff, a probationary TSA screener, brought suit against the TSA Administrator in his official capacity, claiming that his First Amendment rights had been violated. 502 F.3d at 1031. The issue before the Ninth Circuit was "whether the statutory scheme that covers TSA screeners . . . expresses a clear intention on the part of Congress to prohibit judicial review of employees' colorable constitutional claims."[7] <u>Id.</u> at 1036. The court concluded that the ATSA did not express such an intention and that while the plaintiff had no statutory right to appeal under the CSRA, he did have the right to judicial review of his constitutional claim for equitable relief. <u>Id.</u> at 1036. In reaching its decision, the Ninth Circuit relied on the Third Circuit case of <u>Mitchum v. Hurt</u>, 73 F.3d 30 (3d Cir. 1995), which predated the ATSA. Writing for the court, then-Judge Alito explained in <u>Mitchum</u>:

> The power of the federal courts to grant equitable relief for constitutional violations has long been established. Thus, . . . there is a "presumed availability of federal equitable relief against threatened invasions of constitutional interests." It is reasonable to assume that Congress legislates with the understanding that this form of judicial relief is generally available to protect constitutional rights. While Congress may restrict the availability of injunctive relief, we believe that we should be very hesitant before concluding that Congress has impliedly imposed such a restriction on the authority to award injunctive relief to vindicate constitutional rights.

<u>Id.</u> (citations and internal quotation marks omitted) (quoting <u>Hubbard v. EPA</u>, 809 F.2d 1, 11 (D.C. Cir. 1986)); <u>see also Coleman</u>, 2008 U.S. Dist. LEXIS 70900, at *5 (following <u>American</u>

---

[7] As noted in <u>Coleman v. Ridge</u>, which followed <u>American Federation</u>, "[t]he parties [in <u>American Federation</u>] apparently agreed that, because of § 111(d), the 'CSRA' did not apply to the plaintiff's case. The Ninth Circuit did not appear to take issue with this." No. 05-0431, 2008 U.S. Dist. LEXIS 70900, at *5 n.2 (N.D. Cal. Jan. 8, 2008) (citation omitted).

Federation and concluding that "[u]nder the ATSA and the TSA letter, screeners, unlike other TSA employees, have no administrative remedies to challenge their termination," but that they may, however, "obtain judicial review of constitutional claims sounding in equity where the plaintiff has no other remedy").

Other cases have reached similar conclusions.[8] See, e.g., Ray v. DHS, No. 07-2967, 2008 U.S. Dist. LEXIS 64679, at *33-34 (S.D. Tex. Aug. 7, 2008) (finding that the court had subject matter jurisdiction over plaintiff's constitutional challenges to the TSA's employment decisions, citing American Federation and Coleman as authoritative); Galindo v. Arrington, No. 06-308, 2007 U.S. Dist. LEXIS 56391, at *8-9 (W.D. Tex. July 18, 2007) (finding that defendants' arguments (1) that the CSRA preempted all of plaintiff's "constitutional claims against individual federal defendants which arise out of the federal employment relationship" and (2) that "an alternative review process was created for airport screeners to address employment grievances through [the TSA Disciplinary Review Board process]" both lacked merit because "[t]he TSA procedures governing employment grievances for airport screeners are relatively recent and very little authority exists interpreting the recently-enacted procedures"). Therefore, in light of the above-mentioned cases, we find that this Court has subject matter jurisdiction over Albani's alleged constitutional violations.

## 2.      Whether Albani Failed to Establish Claims Under Bivens

As stated, with regard to Federal Defendants, Albani alleges violations of his rights under

---

[8] The only case that we have found which held that an airport screener could not challenge constitutional violations by the TSA directly in federal court decided the issue based on the fact that the employee in that case was a probationary screener. See AFGE v. Stone, No. 03-355, 2005 U.S. Dist. LEXIS 33571, at *21-28 (S.D. Ohio July 6, 2005). As stated, Albani was not a probationary screener at the time of the alleged constitutional violations, but rather, held the position of LTSO.

the First, Fourth, Fifth and Eighth Amendments. Against Wojciechowski, Albani asserts violations of his rights under 42 U.S.C. § 1983, as well as the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments. In his Response, Albani does not address the merits of his claims under the First, Sixth, Eighth and Fourteenth Amendments. As an initial matter, we find that Albani's Complaint contains insufficient factual matter to state plausible claims to relief under the First, Sixth, Eighth and Fourteenth Amendments. See Iqbal, 129 S. Ct. at 1949. Moreover, Albani has not even attempted to rebut Defendants' arguments that these claims are meritless. Thus, we agree with Defendants that Albani does not have viable causes of action under the First, Sixth, Eighth and Fourteenth Amendments and will dismiss these claims with prejudice.

Regarding Albani's remaining claims, i.e. those under the Fourth and Fifth Amendments, it is clear that neither Chertoff nor Hawley can be held liable under Bivens. In Iqbal, the Supreme Court held that "vicarious liability is inapplicable to Bivens and § 1983 suits," and therefore, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 129 S. Ct. at 1948. Neither Albani's Complaint, nor any of the Exhibits subsequently filed with the Court, suggest that Chertoff or Hawley through their own individual actions violated the Constitution. As such, the Bivens claims against them must be dismissed with prejudice under Iqbal.

Furthermore, neither Albani's Complaint, nor any of the Exhibits subsequently filed with the Court, suggest that Clisby or Pritchett-Griggs through their own individual actions violated Albani's Fourth Amendment rights. Thus, the Fourth Amendment claims against Clisby and Pritchett-Griggs must also be dismissed with prejudice. However, although neither Clisby nor Pritchett-Griggs are mentioned by the name in the Complaint, the Exhibits show that Clisby

prepared the Notice of Proposed Removal and Pritchett-Griggs prepared the Notice of Decision

on Proposed Removal. Thus, viewing any reasonable inferences that may be drawn from the

Complaint in the light most favorable to Albani, Albani's claims against Clisby and Pritchett-

Griggs under the Fifth Amendment may be viable if we find that the termination of Albani's

employment amounted to a violation of Albani's due process rights.

### i.      Whether Albani's Fifth Amendment Rights Were Violated

### a.      Procedural Due Process

As a matter of procedural due process, a "tenured public employee is entitled to oral or

written notice of the charges against him, an explanation of the employer's evidence, and an

opportunity to present his side of the story." Cleveland Bd. of Educ. v. Loudermill, 470 U.S.

532, 546 (1985) (citations omitted). Here, Albani received written notice of the charges against

him, was provided with an explanation of the TSA's evidence and was given an opportunity to

present his side of the story. Further, Albani did in fact present his side of the story in his appeal

to the TSA Disciplinary Review Board. Moreover, the hearing procedures of the TSA

Disciplinary Review Board have been found to satisfy the Fifth Amendment. See Zynger v.

DHS, No. 09-2478, 2010 U.S. App. LEXIS 6139, at *4-5 (2d Cir. Mar. 25, 2010) ("Zynger was

afforded and pursued a full, post-termination adversarial hearing in which she presented – and

the TSA Disciplinary Review Board considered and rejected – her arguments . . . ."); Sutera v.

TSA, No. 09-2351, 2010 U.S. Dist. LEXIS 42759, at *15-20 (E.D.N.Y. Apr. 29, 2010). Thus,

we find that Albani's procedural due process rights were not violated.

### b.      Substantive Due Process

An individual's substantive due process rights bar "certain government actions regardless

of the fairness of the procedures used to implement them[]. . . ." <u>Daniels v. Williams</u>, 474 U.S. 327, 331 (1986). To prevail on a claim alleging a violation of substantive due process, a claimant must establish that the governmental conduct at issue was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 847 n.8 (1998). In this case, given the fact that videotape evidence was relied upon in the governmental decision-making process, we find that in viewing any reasonable inferences that may be drawn from the Complaint in the light most favorable to Albani, the conduct at issue does not shock the conscious so as to establish a violation of substantive due process.

### c.     Right Against Self-Incrimination

In <u>Garrity v. New Jersey</u>, the Supreme Court held that where public employees are given the choice of either forfeiting their jobs or incriminating themselves, the Fifth Amendment has been violated because a forced decision of that kind is "likely to exert such pressure upon an individual as to disable him from making a free and rational choice." 385 U.S. 493, 497 (1967) (citation and quotation marks omitted). Albani does not allege that he was given the choice of either forfeiting his job or incriminating himself, and his sworn statement contained the following language: "I am making this statement of my own free will, without any duress or coercion." Therefore, we find that Albani's claims under the Fifth Amendment must be dismissed.

### ii.     Whether Albani's Fourth Amendment Rights Were Violated

As an initial matter, Wojciechowski in the letter attached to his Motion explicitly does not challenge Albani's Fourth Amendment claim at this stage in the proceedings. Albani's

Complaint alleges, and the entire record before the Court indicates, that Wojciechowski, rather than any individual Federal Defendant, effectuated Albani's arrest and prosecution. Therefore, the only basis for a Fourth Amendment claim against an individual other than Wojciechowski would be an allegation that Albani was seized without reasonable suspicion when Albani was escorted from his checkpoint work station to the Philadelphia Police Department and "interrogated for two and half hours" on November 5, 2007. Albani's Complaint, however, falls short of making such an allegation, but rather, merely states that Jackson and Jones "required" Albani to be brought to the Philadelphia Police Department for questioning.

The Fourth Amendment prohibits "unreasonable searches and seizures"; seizures without a warrant are presumptively unreasonable. U.S. Const. amend. IV. However, under the exception to the warrant requirement established in Terry v. Ohio, 392 U.S. 1 (1968), the Supreme Court has held that "police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry, 392 U.S. at 30). The Supreme Court has explained that a Fourth Amendment "seizure does not occur simply because a police officer approaches an individual and asks a few questions." Florida v. Bostick, 501 U.S. 429, 434 (1991). "These encounters of short duration that do not amount to Fourth Amendment seizures can be characterized as 'consensual' because the citizen has the ability to engage in or terminate the encounter." United States v. Crandell, 554 F.3d 79, 84 (3d Cir. 2009) (citation omitted). Reasonable suspicion is not required when an encounter is consensual. United States v. Kim, 27 F.3d 947, 950 (3d Cir. 1994). In this case, viewing all reasonable inferences that may be drawn from the Complaint in

the light most favorable to Albani, we conclude from Albani's allegation – that Jackson and Jones "required" Albani to be brought to the Philadelphia Police Department – that the encounter Albani has described was not consensual. Therefore, Jackson and Jones would have needed a reasonable suspicion to seize Albani.

"Reasonable suspicion is just that: suspicion that is reasonably based on the totality of the facts and circumstances." United States v. Mathurin, 561 F.3d 170, 174 (3d Cir. 2009). As stated, Albani alleges that on or about October 20, 2007, a passenger claimed to have lost her wallet in or about the passenger screening security checkpoint at Philadelphia International Airport where Albani was working. Albani further asserts that on November 5, 2007, Jackson and Jones escorted Albani to the Philadelphia Police Department. It could be inferred from the chronology set forth in Albani's Complaint that Albani is alleging that Jackson and Jones lacked a reasonable suspicion to seize him because the evidence they were relying on, i.e. videotape recordings of the October 20, 2007 incident, had become stale by November 5, 2007.

However, even upon viewing all reasonable inferences that may be drawn from the Complaint in the light most favorable to Albani, we nevertheless find that the factual allegations in Albani's Complaint are so scant that they do not allow the reasonable inference that there was no reasonable suspicion to seize him. As the Ninth Circuit has stated, the "mere lapse of substantial amounts of time is not controlling in a question of staleness." United States v. Pitts, 6 F.3d 1366, 1369 (9th Cir. 1993). Therefore, the mere fact that more than two weeks had elapsed between the October 20, 2007 incident and the alleged seizure on November 5, 2007 does not allow us to find a reasonable inference that there was no reasonable suspicion to seize Albani. As such, we must dismiss Albani's Fourth Amendment claim against Jones and Jackson.

### 3. Whether the <u>Bivens</u> Claims are Barred by Qualified Immunity

As explained herein, we are dismissing all of Albani's claims with prejudice, except for the Fourth Amendment claim against Wojciechowski, which has not been challenged, and the Fourth Amendment claims against Jackson and Jones, which, as explained below, we are dismissing without prejudice. Consequently, the issue of qualified immunity only pertains to Jones and Jackson. The Third Circuit has stated that the qualified immunity inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition. . . . [T]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Thomas v. Independence Twp.</u>, 463 F.3d 285, 300 (3d Cir. 2006) (quoting <u>Saucier v. Katz</u>, 533 U.S. 194, 201-02 (2001)) (quotation marks omitted). We are cognizant that "the trial court must exercise its discretion in a way that protects the substance of the qualified immunity defense . . . so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings." <u>Id.</u>

Here, however, we are presented with a Complaint which does not lend itself to an early resolution of the qualified immunity issue. The court in <u>Thomas</u> has instructed that when a district court is presented with such a complaint, it has several options. "First, a district court may order the plaintiff to reply to the defendant's answer pleading qualified immunity. Second, a district court may grant a defense motion for a more definite statement under Rule 12(e) with respect to the conduct of which the plaintiff complains." <u>Id.</u> at 301. We find that allowing Albani to amend his Complaint: (1) is akin to the second option set forth in <u>Thomas</u>; (2) will allow for a more focused analysis of whether qualified immunity exists regarding the remaining

claims; (3) will not immediately subject Jones and Jackson to discovery or trial proceedings; and (4) will comport with the Third Circuit's mandate in <u>Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.</u>, 482 F.3d 247, 252 (3d Cir. 2007), as discussed below.

### C.  Whether Albani's Negligence Claims Against Wojciechowski are Barred by the Tort Claims Act

Wojciechowski seeks to dismiss Albani's negligence claims against him.  As stated, in his Complaint, Albani alleges, inter alia, that "Wojciechowski unlawfully and negligently arrested and prosecuted" him.  (Pl.'s Compl. ¶ 83.)  Under the Tort Claims Act, employees generally enjoy the same broad immunity as their employing agencies.  <u>DeBellis v. Kulp</u>, 166 F. Supp. 2d 255, 279 (E.D. Pa. 2001) ("'An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency . . . .'" (quoting 42 Pa.C.S. § 8545)).  Under 42 Pa.C.S. § 8541, "except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S. § 8541.  There are, however, exceptions to this general grant of immunity.  Under 42 Pa.C.S. § 8542(a), a plaintiff seeking to recover against a local agency or its employee(s) acting within the scope of his or her office or duties, must plead and prove that he has a common law or statutory claim in negligence against the local agency and that the local agency's alleged negligent act which caused the injury complained of falls within one the following categories set forth in § 8542(b):  (1) vehicle liability, (2) care, custody or control of personal property, (3) real property, (4) trees, traffic controls and street lighting, (5) utility service facilities, (6) streets, (7)

sidewalks, and (8) care, custody or control of animals.  <u>Schlichter v. Limerick Twp.</u>, No. 04-4229, 2005 U.S. Dist. LEXIS 7287, at *34 (E.D. Pa. Apr. 26, 2005).  Because Albani's claims for false arrest and malicious prosecution do not fall within any of the statutorily-prescribed categories, Albani's claims for negligence against Wojciechowski must be dismissed with prejudice.

However, in Paragraph 84 of Albani's Complaint, Albani alleges false arrest and malicious prosecution without mentioning that such conduct was negligent.  (Pl.'s Compl. ¶ 84.)  Further, in Paragraph 86, Albani asserts that Wojciechowski's actions "were not in good faith."  (<u>Id.</u> ¶ 86.)  Because Wojciechowski has not argued against the merits of Albani's Fourth Amendment claim, and because we must view any reasonable inferences that may be drawn from the Complaint in the light most favorable to Albani, Albani's Fourth Amendment claim against Wojciechowski will not be dismissed insofar as Albani has not alleged negligent conduct on the part of Wojciechowski.

### D.     Whether Albani Should be Granted Leave to Amend his Complaint

"[I]n the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient."  <u>Ricketts v. AW of UNICOR</u>, No. 07-49, 2008 U.S. Dist. LEXIS 37058, at *12 (M.D. Pa. May 6, 2008).  In <u>Fletcher-Harlee</u>, the Third Circuit stated that "[Third Circuit] precedent supports the notion that in civil rights cases district courts must offer amendment – irrespective of whether it is requested – when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."  482 F.3d 247, 251 (3d Cir. 2007).

A <u>Bivens</u> claim is considered a federal civil rights action.  <u>See</u> <u>Junior Chamber of Commerce, Inc. v. U.S. Jaycees</u>, 495 F.2d 883, 886 (10th Cir. 1974).  Thus, we must grant

Albani leave to amend his Complaint unless doing so would be futile.  As discussed, Albani has never attempted to explain in his multiple filings with the Court how his constitutional rights were violated under the First, Sixth, Eighth and Fourteenth Amendments.  We have no doubt that allowing amendment with respect to these claims would be futile.  We have also found that vicarious liability is inapplicable to Bivens claims, and therefore, neither Chertoff nor Hawley can be held liable under Bivens.  Furthermore, we have found that the Fourth Amendment claims against Clisby and Pritchett-Griggs must be dismissed because neither Albani's Complaint, nor any of the Exhibits subsequently filed with the Court, suggest that Clisby or Pritchett-Griggs through their own individual actions violated Albani's Fourth Amendment rights.  We have further determined that upon viewing all reasonable inferences that may be drawn from the Complaint in the light most favorable to Albani, Albani's Fifth Amendment rights were not violated.  Finally, we have held that the Torts Claims Act bars Albani's negligence claims against Wojciechowski.  Therefore, the only challenged claims that remain are the Fourth Amendment claims against Jackson and Jones.  If Albani can sufficiently plead that Jackson and Jones did not have a reasonable suspicion to seize him, it is possible that he could overcome a motion to dismiss.  Thus, amendment may not be futile with respect to these claims.  In accordance with Fletcher-Harlee, we will grant Albani leave to amend.

An appropriate Order follows.