IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANCIS ALBANI, | CIVIL ACTION |
| Plaintiff, | |
| v. | No. 09-4790 |
| UNITED STATES OF AMERICA, et al., | |
| Defendants. | |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                                  **OCTOBER 25, 2010**

Presently before the Court is Defendants Leo Jackson ("Jackson")[1] and Victoria Jones' ("Jones")[2] Motion to Dismiss Plaintiff Francis Albani's ("Albani") Amended Complaint. For the reasons set forth below, the Defendants' Motion will be granted.

**I.    BACKGROUND**

On October 19, 2009, Albani filed his Complaint in this Court against Jackson and Jones, in addition to the United States of America (the "United States"), the DHS, Michael Chertoff ("Chertoff"), Edward S. "Kip" Hawley ("Hawley"), George E. Clisby ("Clisby"), Christine Pritchett-Griggs ("Pritchett-Griggs"), and Detective M. Wojciechowski ("Wojciechowski") of the Philadelphia Police Department. In his Complaint, Albani stated that on November 9, 2003,

---

[1] Jackson is a Criminal Investigator/Special Agent for the Philadelphia Office of the Office of Inspection, for the Transportation Security Administration ("TSA"), of the United States Department of Homeland Security (the "DHS").

[2] Jones is the Assistant Federal Security Director for Law Enforcement ("AFSD/LE") at the Philadelphia International Airport (the "Airport"), employed by the TSA and DHS.

he was hired as a Transportation Security Officer ("TSO") for the TSA.[3] He further asserted that in February of 2005 he was promoted to Lead Transportation Security Officer ("LTSO").[4] The Complaint alleged that at all times material hereto: (1) the United States operated the agency of the DHS and its sub-agency, the TSA (Compl. ¶ 2); (2) Chertoff was the Secretary of the DHS (id. ¶ 3); (3) Hawley was the Administrator of the TSA (id. ¶ 4); (4) Clisby was the Assistant Federal Security Director for Screening of the TSA in Philadelphia, Pennsylvania (id. ¶ 5); (5) Pritchett-Griggs was the Deputy Federal Security Director for Screening of the TSA (id. ¶ 6); (6) Jackson was a Federal Law Enforcement Agent (id. ¶ 7); and (7) Jones was a Federal Law Enforcement Agent (id. ¶ 8).

In his Complaint, Albani alleged that during the relevant time period, Jackson and Jones, as well as the other above-named federal Defendants, acted within the course and scope of their employment and under color of federal law. (Pl.'s Compl. ¶¶ 3-8.) Further, Albani sued all the Defendants individually as well as in their official capacities. (Id.) The Complaint also alleged that at all times material hereto, Wojciechowski was a Police Officer and Detective for the City of Philadelphia Police Department and was acting "under color of State law, to wit, under color of the statutes, ordinances, regulations, customs and usages of the United States, and of the

---

[3] According to the TSA's website, the duties and responsibilities of TSOs include implementing security-screening procedures that are integral to TSA objectives and that will "serve to protect the traveling public by preventing any deadly or dangerous objects from being transported onto an aircraft." TSA: Find Your Dream Job, http://www.tsa.gov/join/careers/careers_security_jobs_tso.shtm.

[4] According to the TSA's website, the duties and responsibilities of LTSOs, like TSOs, include implementing security-screening procedures that are central to TSA objectives and that will "serve to protect the traveling public by preventing any deadly or dangerous objects from being transported onto an aircraft." TSA: Find Your Dream Job, http://www.tsa.gov/join/careers/careers_security_jobs_ltso.shtm.

Commonwealth of Pennsylvania pursuant to his respective authority as a police officer and detective of the City of Philadelphia." (Id. ¶ 9.)

Albani asserted that on or about October 20, 2007, a passenger claimed to have lost her wallet in or about the passenger screening security checkpoint at the Philadelphia International Airport where Albani was working. (Id. ¶ 20.) Albani further alleged that on November 5, 2007, Jones and Jackson "required him to accompany them" from his checkpoint work station to the Philadelphia Police Department ("PPD") office at the Airport where Wojciechowski was present. (Id. ¶ 21.) Albani claimed that he was then "interrogated for two and half hours and gave a three page written statement." (Id.) Albani further claimed that he was then "instructed to leave work even though his shift was not yet done and to return in two days which he did." (Id.)

Albani stated that on November 22, 2007, he reported to work and "after signing in, he was taken into custody and arrested by Wojciechowski and charged with theft by unlawful taking, theft loss property and theft RSP arising out of the October 20, 2007 incident." (Id. ¶ 22.) Albani alleged that he remained in custody for twenty-one hours. (Id.)

On December 12, 2008, following a bench trial in the Philadelphia Municipal Court, Albani was found not guilty of all charges related to the October 20, 2007 incident. (Id. ¶ 23.) Specifically, regarding the charges brought against Albani, the trial judge stated: "It's suspicion. I don't think you have beyond suspicion and conjecture on a good day. I understand the suspicion, but I'm at beyond a reasonable [doubt]. And I'm not there." (Pl.'s Mem. of Law in Opp. to Mot. to Dismiss, Ex. B at 43.)

On February 24, 2008, Albani's American Federation of Government Employees representative received a Notice of Proposed Removal prepared by Clisby, dated February 20,

2008. (Id., Ex. B at 1.) In the Notice of Proposed Removal, Clisby stated that "[t]he security videotapes . . . . show you departing from the checkpoint with your arm close to your body in a manner that is consistent with holding the passenger's wallet under your vest." (Id., Ex. B at 13-14.) Clisby further stated that "[y]ou have the right to reply to this proposal orally and/or in writing and furnish evidence in support of your reply . . . ." (Id., Ex. B at 14.) In a letter dated March 6, 2009, counsel for Albani responded to the Notice of Proposed Removal, arguing that because the "TSA has not proved by a preponderance of the evidence that Mr. Albani has committed the crime of theft, this proposed removal is invalid as a matter of law and must be rescinded immediately." (Id., Ex. B at 93.)

In a letter dated March 9, 2009, counsel for Albani informed the TSA that "[d]emand is made for lost wages, future lost wages, pain and suffering and impairment of the quality of life." (Id., Ex. E at 1.) Albani alleges that by September 6, 2009, neither the TSA nor the DHS had either accepted or objected to his demand. (Pl.'s Compl. ¶ 13.) Therefore, pursuant to 28 U.S.C. § 2675(a), Albani considered the failure to act as a final denial of his claim. (Id.)

On March 30, 2009, Pritchett-Griggs issued a Notice of Decision on Proposed Removal, effective April 3, 2009. (Pl.'s Mem. of Law in Opp. to Mot. to Dismiss, Ex. B at 43.) In the Notice of Decision on Proposed Removal, Pritchett-Griggs stated that she considered Albani's arguments in his March 6, 2009 letter, as well as various mitigating factors, but nonetheless decided to remove Albani from his position with the TSA. (Id., Ex. B at 44-45.) In the Notice, Pritchett-Griggs also informed Albani that he had the right to appeal the decision in writing to the TSA's Disciplinary Review Board and explained the relevant procedures. (Id., Ex. B at 45.)

In a letter dated May 4, 2009, counsel for Albani submitted a Disciplinary Review Board

4

Appeal of the Notice of Decision on Proposed Removal. Albani's counsel stated in the appeal brief that:

> Albani asks that TSA rescind this removal, restore him to his former rank of LTSO, and grant him back pay, annual leave, sick leave and seniority privileges dating back to his last day of work, December 14, 2007, or at the very least to December 12, 2008, the date of his acquittal.

(Id., Ex. B at 2.) In a letter dated July 9, 2009, Ernest Carrozza, Director of the Disciplinary Review Board, informed Albani that the Disciplinary Review Board met on July 8, 2009 and denied his appeal. (Id., Ex. C at 1.)

Albani's Complaint contained eight Counts: (1) a negligence claim under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 ("FTCA"), against the United States; (2) a claim pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971)[5] ("Bivens claim") against Chertoff; (3) a Bivens claim against Hawley; (4) a Bivens claim against Clisby; (5) a Bivens claim against Pritchett-Griggs; (6) a Bivens claim against Jackson; (7) a Bivens claim against Jones; and (8) a claim pursuant to 42 U.S.C. § 1983 against Wojciechowski. Against the individual Federal Defendants, Albani alleged violations of his rights under the First, Fourth, Fifth and Eighth Amendments of the United States Constitution. (Id., Ex. A at 13-23.) Against Wojciechowski, Albani asserted violations of his rights under 42 U.S.C. § 1983, as well as the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution. (Id., Ex. A at 25-26.) Albani also alleged, inter alia, that

---

[5]In Bivens, the Supreme Court held that federal officers who acted under color of law were liable for damages caused by their violations of a plaintiff's Fourth Amendment rights. 403 U.S. at 389, 397. Generally speaking, Bivens stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978).

5

"Wojciechowski unlawfully and negligently arrested and prosecuted" him. (Id., Ex. A at 25.)

On December 16, 2009, Wojciechowski filed a Motion to Dismiss. In his Motion, Wojciechowski argued that Albani's claims under the First, Fifth, Sixth, Eighth and Fourteenth Amendments were meritless. Wojciechowski, however, did not argue against the merits of Albani's Fourth Amendment claim, but only contended that Albani's claims against him for negligence were barred by the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8541 et seq. (the "Tort Claims Act").

On December 22, 2009, all the individual Federal Defendants filed a Motion to Dismiss. Regarding the FTCA claim, the Federal Defendants argued that: (1) Albani failed to exhaust administrative remedies; (2) the claim was precluded by the Civil Service Reform Act, Pub. L. 95-454, 92 Stat. 1111 et seq. (codified, as amended, in various sections of 5 U.S.C. (1982 ed. and Supp. IV)) ("CSRA"); and (3) the claim was barred by the Aviation Transportation and Security Act, Pub. L. No. 107-71, 115 Stat. 597 (2001), as codified in 49 U.S.C. § 114 et seq. ("ATSA"). Regarding the Bivens claims, Federal Defendants argued that: (1) the claims were not applicable in the employment context; (2) Albani failed to establish a cause of action under Bivens; and (3) the claims were barred by the doctrine of qualified immunity.

On February 16, 2010, Albani filed his Response to the Motions filed by Federal Defendants and Wojciechowski. In his Response, Albani did not address the merits of his claims under the First, Sixth, Eighth and Fourteenth Amendments. Albani, however, requested that the Court grant him leave to amend rather than dismiss his claims with prejudice if we found that his pleadings were insufficient under Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). On March 2, 2010, all the Federal Defendants filed their Reply to Albani's Response, reiterating the various

arguments set forth in their Motion.

On June 9, 2010, this Court issued an Order granting the Federal Defendants' Motion in part and denying it in part. We ordered that all of Albani's claims against the United States, the DHS, Chertoff, Hawley, Clisby, and Pritchett-Griggs were dismissed with prejudice. We further ordered that all of Albani's claims against Jackson and Jones, except for his Fourth Amendment claims were dismissed with prejudice. The Fourth Amendment claims were dismissed without prejudice.[6] We also granted Wojciechowski's Motion to Dismiss.[7] Albani was granted leave to file an Amended Complaint. Albani filed an Amended Complaint against Jackson, Jones, and Wojciechowski on June 25, 2010. Jackson and Jones filed the instant Motion on August 3, 2010.

## II.    STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). Under Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, the Supreme Court stated that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

---

[6]We determined that the factual allegations in Albani's Complaint were so scant that they did not allow the reasonable inference that there was no reasonable suspicion to seize him. We, thus, dismissed the Fourth Amendment claims against Jones and Jackson without prejudice and allowed Albani to amend his Complaint with regard to these claims. We reasoned that if Albani could sufficiently plead that Jackson and Jones did not have a reasonable suspicion to seize him, it is possible that he could overcome a motion to dismiss. Albani v. U.S., No. 09-4790, 2010 WL 2364426, at * 20-21 (E.D. Pa. June 9, 2010).

[7]We added in this Order that "nothing herein affects the viability of Plaintiff 's Fourth Amendment claims against Wojciechowski insofar as the claims do not allege negligent conduct on the part of Wojciechowski." (Doc. No. 14.)

7

conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. 544, 555 (2007).

Following Twombly, the Third Circuit has explained that the factual allegations in the complaint may not be "so undeveloped that it does not provide a defendant the type of notice which is contemplated by Rule 8." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Moreover, "it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" Id. (alteration in original) (quoting Twombly, 550 U.S. at 563 n.8). Furthermore, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 234 (quoting Twombly, 550 U.S. at 555). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Id. (quoting Twombly, 550 U.S. at 556).

In Ashcroft v. Iqbal, the Supreme Court applied the Twombly standard, stating that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 570). The Supreme Court explained that deciding whether a "complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

Notwithstanding Twombly and Iqbal, the general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief, not detailed factual allegations. Phillips, 515 F.3d at 231. Moreover, when evaluating a motion to dismiss, the court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint, and must view any reasonable inferences that may be drawn therefrom in the light most favorable to the plaintiff. Id.; Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III. DISCUSSION

Albani alleges in his Amended Complaint that Jackson unlawfully and unconstitutionally had him seized, confined, arrested, detained and held him in custody-- depriving him of his right and privilege to be free from false arrest and unreasonable seizure. (Am. Compl. ¶ 23.) Albani states that Jackson investigated the claim of the missing item between October 20, 2007 and November 5, 2007, and as part of that investigation, interviewed witnesses, viewed videotapes of the security area, and reviewed reports concerning the incident. (Id.) Albani asserts that none of which could have provided Jackson with probable cause or reasonable suspicion to believe that he ever misappropriated the item.[8] (Id. ¶¶ 28-29.) The Amended Complaint further alleges that on November 5, 2007, Jackson, lacking probable cause or reasonable suspicion, detained Albani in the Airport room for more than two hours and questioned him. (Id. ¶¶ 31-32, 38.) Albani

---

[8] In his filings, Albani often refers to the missing item as a passport folder rather than a wallet.

9

claims that during this time, Jackson's sole purpose in seizing and detaining him was to coerce a confession from him, and that he repeatedly asked for assistance of counsel, but was denied. (Id. ¶¶ 38-41.)

Albani makes similar allegations against Jones in his Amended Complaint. Albani alleges that at approximately 12:00 p.m. on November 5, 2007, Jones forcibly and with a show of authority removed him from his work area and forced him to accompany her to a PPD office at the Airport. (Id. ¶¶ 64-65.) There, Albani claims that Jones ordered him into a small room where he was detained under the custody of Jackson until Jones took him to an area called the International Plaza where he was further detained. Albani alleges that, at all times, Jones had neither reasonable suspicion nor probable cause for the seizure and custodial detention, and that Jones' sole purpose in seizing and detaining him was to attempt to coerce a confession. (Id. ¶¶ 67-70.)

In this instant Motion, Jackson and Jones argue that Albani's <u>Bivens</u>' claims against them must be dismissed because they are entitled to qualified immunity. Under the doctrine of qualified immunity, "officers performing discretionary functions are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Curley v. Klem</u>, 298 F.3d 271, 277 (3d Cir.2002) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982) ). Having determined that, viewed in the light most favorable to plaintiff, the record evidence is sufficient for a reasonable jury to find a violation of plaintiff's Fourth Amendment right to be free from unreasonable seizures, the court must next assess whether the particular right infringed was "clearly established." <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). A right is clearly established

for purposes of the qualified immunity analysis when the "contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202.

"Qualified immunity balances two important interests-- the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 129 S. Ct. 808, 815 (2009). Because qualified immunity is "an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). In Pearson,[9] the Supreme Court stated that "we have made clear that the 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that 'insubstantial claims' against government officials [will] be resolved prior to discovery." 129 S. Ct. at 815-16 (citing Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987)). Pearson added that "we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." 129 S.Ct. at 816 (citing Hunter v. Bryant, 502 U.S. 224, 227 (1991)).

The Fourth Amendment prohibits "unreasonable searches and seizures"; seizures without

---

[9]In Pearson, the Supreme Court relaxed Saucier's rigid requirement that a determination of whether "the facts alleged show the officer's conduct violated a constitutional right . . . must be the initial inquiry" in every qualified immunity case. 129 S.Ct. at 816 (quoting Saucier, 533 U.S. at 201). In other words, Saucier's two-step analysis is no longer a mandated process; courts now have the discretion to determine which step to analyze in a given case. Id. at 819.

11

a warrant are presumptively unreasonable. U.S. Const. Amend. IV. A seizure occurs only "when [a police officer], by means of physical force or show of authority, has in some way restrained the liberty of a citizen." Terry v. Ohio, 392 U.S. 1 (1968); see also Curley v. Klem, 298 F.3d at 279 (a "seizure occurs [w]henever an officer restrains the freedom of a person to walk away.") The Supreme Court in United States v. Mendenhall, held that a "person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." 446 U.S. 544, 554 (1980).

Jones states in a Declaration that her duties as the Assistant Federal Security Director of Law Enforcement at the Airport includes conducting criminal investigations. She states that on October 20, 2007 she learned that a passenger passing through the TSA security checkpoint into secure space at the Airport reported the loss of a wallet, and that she investigated its disappearance. Jones states that part of her investigation included viewing a videotape of the checkpoint area, and that in order to further TSA's investigation into the missing wallet, she went to Albani during his shift and asked him to accompany her to the PPD office at the Airport for questioning. (Defs.' Mot. Dismiss, Ex. A.) She adds that Albani was not under arrest and she did not use physical force against him. Jones states that she took Albani to the PPD office because Wojciechowski was also investigating the missing wallet and because that office had the media capability to play the checkpoint video. (Id.) Jones states further that Jackson joined them there to question Albani and that he was informed that he was not under arrest, and that this was his opportunity to discuss the disappearance of the wallet and to watch the checkpoint video. Jones states that she spent at least an hour with Albani reviewing the video, which took time to

12

cue and to review because there were eleven different camera angles. (Id.)

Jackson states in his own Declaration that on November 5, 2007 he was informed that an employee was suspected of committing a theft of a passenger's wallet at the security checkpoint, and that the suspect was going to be questioned by Wojciechowski. He added that he was assigned to participate in the questioning on behalf of the Philadelphia Office of Inspection (the "OI"). (Defs.' Mot. Dismiss, Ex. B.) Jackson states that he did not ask Albani to come to the PDD office, nor was he present when Albani was asked to leave his work station. Rather, he went directly to the PPD office and met with Wojciechowski, and that Jones arrived with Albani shortly thereafter. (Id.) Jackson states further that Albani was informed at the PPD office that he was not under arrest and that he was being given the opportunity to discuss the disappearance of the wallet, and to review the checkpoint videotape. Jackson asserts that Albani viewed the videotape which was frequently replayed at Albani's request, and that at the conclusion of the interview, Albani left the PPD office. (Id.)

In first addressing the issue of whether Albani was "seized," although both Jones and Jackson have stated that Albani was not under arrest when he was taken to the PPD office and that he was only being questioned about the missing wallet, we find that under such circumstances Albani could reasonably have believed that he was not free to leave the PPD office at any time. We, thus, find that such detainment in the PPD's office was not consensual, and Jones and Jackson would have needed a reasonable suspicion to seize Albani. "Reasonable suspicion is just that: suspicion that is reasonably based on the totality of the facts and circumstances." United States v. Mathurin, 561 F.3d 170, 174 (3d Cir. 2009).

In addressing this issue, Albani has requested that this Court view the checkpoint

13

videotape in question.[10] Albani states:

> As all determinations of reasonableness and probable cause are fact sensitive and since this case presents the unusual circumstances where all of the actions observed and interpreted by the defendants are contained in that videotape this court can only determine the viability and reasonableness of the defendants' conclusions by reviewing the tape itself. Plaintiff asserts that no reasonable non-predisposed law enforcement officer reviewing said tape could form even a suspicion that the plaintiff was engaging in criminal activity and that only a predisposed law enforcement officer nit picking and forming baseless conclusions without any factual support could come to such a conclusion. Only by viewing the videotape can the court judge the merit of the declarations offered by the defendants and, therefore, a specific request is made that the court actually view the videotape prior to deciding the defendants' motion.

(Pl.'s Resp. Mot. Dismiss at 28-29.) We have granted Albani's request for this Court to view the videotape of the checkpoint in question. After watching the video, we find that Jackson and Jones had significant reasonable suspicion to detain Albani for questioning concerning the missing wallet. In her Declaration, Jones states that she viewed the video recordings of the checkpoint where the wallet was last seen, and that based upon her training and experience, she found there to be multiple instances of guilty behavior on the part of Albani which led her to make the conclusion that he stole the wallet. Jones states that such instances of guilty behavior included:

> 1) Albani made visual contact with the wallet, then shifted his eyes to scan his surroundings without moving his head;
> 2) after he scanned his surroundings, Albani deviated from expected security procedures with respect to another passenger's luggage and placed three divestment bins over the wallet in order

---

[10]The videotape is attached to Albani's Response to this Motion as Exhibit F.

to conceal it;

3) Albani then picked up the stack of three divestment bins and the wallet by sweeping his hand underneath the bins to lift them rather than lift them by the lip;

4) Albani then stacked the bins, some of which previously rested over the wallet, and moved them to an unused checkpoint lane where they would be away from the traveling public, and he maintained visual contact with the stack of bins;

5) Albani appeared to be overly concerned with his surroundings to the point that he improperly screened another passenger's bag;

6) Albani moved a stack of divestment bins from the public side of the security checkpoint, where they are needed, to the sterile side of the security checkpoint, where they are not needed. He then stacked the bins that concealed the wallet into that larger stack and pushed the entire stack of bins back to the public side of the security checkpoint;

7) on the public side of the security checkpoint, Albani rifled through the stack of the gray divestment bins, an activity that employees need not undertake; and

8) Albani appeared to conceal a small black object, and then walked from the public side of the checkpoint to the sterile side with an unnatural gait with his right arm held stiff against his body while his left arm hung naturally.

(Defs.' Mot. Dismiss, Ex. A.) After viewing the videotape numerous times, we concur with each of the above observations by Jones of Albani's behavior and find that both Jones and Jackson had "reasonable suspicion" to "seize" Albani for questioning of the missing wallet.[11] Thus, we

---

[11]Notably, in his Response to the instant Motion, Albani included a Declaration of William E. Richard, Jr. ("Richard"). (Pl.'s Resp. Mot. Dismiss, Ex. D.) In this Declaration, Richard states that from October of 2002 to June of 2008, he was Lead Transportation Security Advisor for the TSA for the DHS at the Airport, and that in this position he was completely familiar with the operation of security checkpoints and its procedures, and presently remains so. He states further that he completely reviewed the videotapes of the checkpoint in question, and concluded that at no time did he observe Albani deviate from expected security procedures, and at no time did he observe Albani make any attempt to conceal the object or any other object in question. He also states that it was his opinion that based on his experience and review of the videotape that "no reasonable person could conclude based on a review of that videotape that Mr.

find that both Jones and Jackson are entitled to qualified immunity under the Saucier test. Because the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation," Pearson, 129 S.Ct. at 816, we dismiss the Bivens claims against both Jones and Jackson and grant the Motion.[12]

An appropriate Order follows.[13]

---

Albani stole, touched, concealed or made contact with any wallet or passport folder." (Id.) We strongly disagree with Richard's conclusions, and find it quite baffling how a person with Richard's experience in this area could review this videotape and not observe suspicious behavior on the part of Albani.

[12]Jones and Jackson also argue in their Motion that Albani's Fourth Amendment claims are barred by the FTCA judgment bar. See U.S.C. § 2676. However, in light of our decision dismissing Albani's Fourth Amendment claims on the basis of qualified immunity, we need not discuss this argument.

[13]The Amended Complaint also alleges a Section 1983 claim against Wojciechowski. To date, Wojciechowski has not filed a motion to dismiss this cause of action. With the granting of the instant Motion, all claims against all Defendants have been dismissed with the exception of this lone claim against Wojciechowski.